## BROWN *ads.* COMBS et al.

1. A deed was made to J. G. B., trustee of the Lexington and Danville Railroad Company of Kentucky, of the second part, the *habendum* and *tenendum* clauses and the covenants being to said party of the second part, his heirs and assigns. *Held,* that on the face of the deed it showed a grant, to J. G. B., and not to him in trust for the company.

2. The railroad company executed a mortgage to J. G. B. and others, and J. G. B. made agreements for the culture of the lands, in which he styles himself as agent, and signs as such. *Held,* that these circumstances, together with the deed being made to him as trustee, &c., were sufficient evidence that the property was conveyed to J. G. B. in trust for the company, and that it was a mere naked trust; *held,* also, that taking a mortgage from the company, and acting as agent as above stated, were inconsistent with his character as trustee, and were sufficient evidence from which to presume a surrender of the trust and conveyance of the land to the company.

3. To establish a trust, no particular form of expression is necessary in a deed; it cannot be declared by parol, but may be created by any writing showing that a trust is intended.

4. A *cestui que trust* cannot recover in ejectment against his trustee unless a surrender to him of the legal estate can be reasonably presumed. He has no alternative but to bring the action against a stranger in the name of his trustee.

5. A trustee, as tenant of the legal estate, may recover in ejectment from his own *cestui que trust,* and the *cestui que trust* has no defence to the action at law; his only remedy is to sue out an injunction in a court of equity.

6. A surrender of the trust, and a conveyance thereof by the trustee, may be presumed when the object of the trust has been accomplished.

7. A mortgagee by taking a mortgage assents to his mortgagor's right to execute it, and is estopped from denying the mortgagor's title.

8. Where a mortgage is given to A, B, and C, to secure them as endorsers for the mortgagor, if C is in possession of the premises and A and B bring an action of ejectment against him to recover the land, if the plaintiffs are entitled to recover they will obtain the whole premises, unless the defendant can prove damage to him by payment of or liability on some of the bills of exchange or notes against which he was to be indemnified by the mortgage.

9. Where an action of ejectment is brought by one joint tenant, tenant in common, or coparcener against another, if the defendant files his plea, and does not give notice that he defends as joint tenant, tenant in common, or coparcener, and does not admit the plaintiff's right to a share of the

property, but defends for the whole premises, it is an admission of ouster, a denial of the whole right of the plaintiff, and the plaintiff will recover whatever part his proof shows he is entitled to.

In ejectment on rule to show cause.

Argued before Justices OGDEN, HAINES, and VREDEN-BURGH, at June Term, 1860.

*A. V. Schenck,* for defendants.

*W. Halsted* and *W. L. Dayton,* for plaintiff.

The opinion of the court was delivered by

HAINES, J.   This was an action of ejectment for lands in Middlesex, to which the plaintiffs claim title under and by virtue of an indenture of mortgage, executed by the Lexington and Danville Railroad Company of Kentucky, to the plaintiffs and to the defendant, to secure and indemnify them against loss by reason of their liability on certain bills of exchange, as acceptors, drawees, or endorsees for the benefit of the company.

To prove title in the mortgagors, the plaintiffs read in evidence two several deeds of conveyance of the mortgaged premises, executed by Alexander Stoddart and wife, of the first part, to the said John G. Brown, trustee of the Lexington and Danville Railroad Company of Kentucky, of the second part; and they insist that, on the execution of these deeds, the title vested in the railroad company by virtue of the statute of uses, which provides that all persons to whom the use of any tract of land shall be granted, by any deed or conveyance whatsoever, shall be deemed and taken to be in as full and ample possession of such land as if they and their heirs and assigns were possessed thereof by solemn livery of seizin and possession. *Nixon* 130, *pl.* 4.

The claim of the plaintiffs, if it depend solely on the statute of uses, cannot prevail, for the simple reason that

the use is not granted to them. In the premises of the deeds the parties are described as Alexander Stoddart and Sarah, his wife, of the first part, and John G. Brown, trustee of the Lexington and Danville Railroad Company of Kentucky, of the second part. Whether these words of addition, trustee, &c., are meant to express a trust, or are merely descriptive of the person of the grantee, they import no grant in law to the railroad company. Nor do the subsequent clauses of *habendum* and *tenendum* remove the objection. They express that the party of the second part is to have and to hold the premises granted unto "the said party of the second part, his heirs and assigns, to the only proper use, benefit, and behoof of the said party of the second part, his heirs and assigns, forever." And if the covenants of a deed could control a grant, they would be unavailing here, for they are to and with the said John G. Brown, party of the second part, his heirs and assigns.

It was further insisted that the deeds from Stoddart to Brown create a trust in him for the company, and that, it being a mere naked or dry trust, the statute of uses transfers it immediately into possession for the use of the railroad company ; and for the purpose of presenting the question, it was so ruled at the circuit, and the jury was instructed to render a verdict for the plaintiffs.

On a motion to set aside the verdict, it is objected that the deeds create no trust—that the words of addition, trustee, &c., are only descriptive of the person of the grantee.

If the deeds stood alone, they would seem to come within the rule expressed in *Den, ex dem. Cairns et al.,* v. *Hay,* 1 *Zab.* 174, where the conveyance was to Samuel Cairns and others, " trustees of the Associate Presbyterian Congregation of Newark ; " and, although it was pretty evident, from the use made in the deed of the word " successors," that the intention was to convey to the corporation, yet it was held that no title passed to it.

But for the establishment of a trust estate we are not confined to the expressions of the deeds, nor in any particular form requisite to its creation. It is in its nature averable, and before the statute of frauds, in some cases, particularly in those in which lands could be conveyed by feoffment, a trust could be raised by parol; and since the statute of frauds, although in respect to lands a trust cannot be declared by parol, yet no other formality is requisite than a simple note in writing not under seal. *Lewin on Trust and Trustees* 26, and cases there referred to.

The statute requires only that all declarations or creations of trusts or confidence of lands, &c., shall be manifested and proved by some writing signed by the party who is able to declare it. *Nixon* 306, § 11.

The declaration of a trust need not be made by formal deed or will. A simple letter or memorandum, or any writing of a similar untechnical and informal character, will be sufficient, if it clearly express the property to be in trust, and sufficiently connects the trustee with the subject matter of it. *Foster* v. *Hale*, 3 *Ves.* 696; *Steere* v. *Steere*, 5 *Johns. Ch. R.* 1–12.

As evidence of a trust, the plaintiffs had the deeds of Stoddart to Brown, trustee, the mortgage executed by the company to the plaintiffs, together with Brown, as a mortgagee, and the agreement made by Brown, subsequently to the execution of the mortgage, for the culture of parts of the lands, in which he styles himself and signs himself agent; and this I deem sufficient evidence that the deeds of Stoddart to Brown were meant to convey the lands to him in trust for the company, and that it was a mere naked trust.

But it is further objected that, if Brown is the trustee, the action of ejectment will not lie, because a *cestui que trust* cannot compel an execution of the trust in a court of law.

That such is the general rule at this day cannot be denied, notwithstanding what was ruled in *Lade* v. *Halford*,

*B. N. P.* 110, and in *Armstrong* v. *Pierce,* 3 *Burr.* 1901, and a few other early cases, to the effect that a *cestui que trust,* in ejectment, could not be non-suited by a term outstanding in his trustee, and that a trustee, a plaintiff in ejectment, could not recover against his own *cestui que trust.*

The rule before those decisions was, and since then has been fully re-established, that a *cestui que trust* cannot recover in ejectment against his trustee, unless a surrender to him of the legal estate can be reasonably presumed. *Doe* v. *Staple,* 2 *Term R.* 684; *Doe* v. *Sybourn,* 7 *Term R.* 2; *Goodtitle* v. *Jones,* 7 *Term R.* 45.

The *cestui que trust* has no alternative but to bring his action (against a stranger) in the name of his trustee. And the trustee, as tenant of the legal estate, may recover in ejectment from his own *cestui que trust,* who has no defence to an action at law, but is only entitled to sue out an injunction in equity. *Annesley* v. *Simeon,* 4 *Madd.* 390; *Roe* v. *Read,* 8 *Term R.* 122, 123; *Shine and Gough,* 1 *Ball & Beat.* 445.

Yet the surrender of a trust or the conveyance of the legal estate may be presumed from circumstances, and that seems to have been the ground of the opinions in Lade *v.* Halford and Armstrong *v.* Pierce and the concurring authorities.

These cases, said Kent, J., in *Jackson* v. *Sisson,* 2 *Johns. Cases* 324, "seem to be based on the principle that where the beneficial occupation of an estate may possibly suppose a conveyance to the person equitably entitled to it, the jury may be directed to presume one."

A surrender may be presumed when the object for which the trust was created has been accomplished; and a conveyance may be presumed from lapse of time after the object has been effected. *England* v. *Slade,* 4 *Term R.* 682.

In all cases where the trustee ought to convey to the beneficial owner, and the presumption may reasonably be

Brown ads. Combs.

made, it may be left to the jury to presume that he had conveyed accordingly, in order to prevent a just title from being defeated by a matter of form. Lord Kenyon, in *Doe* v. *Sybourn*, 7 *Term R.* 2; *Hill on Trustees* 253–257, and the cases there quoted to the like purpose.

The same doctrine was held by this court in the case of *Den, on demise of Obert et al.,* v. *Bodine, Spencer* 394, and is well expressed by Carpenter, J., who, after reviewing the leading cases, says, " Courts have been very free to presume deeds in execution of trusts according to the duty of trustees, where it is for the sole benefit of the *cestui que trust,* where the trust has been fulfilled, and where it is the duty of the trustee to convey, or a court of equity would decree a conveyance. The cases range, as to the length of time, from many to a very few years ; but it is evident, from the principle on which the decisions go, that a very short time in a case of clear trust would be sufficient. Law grounds the presumption on the fact that the court of equity would compel the execution of such trusts, and seems, in this instance, to follow very nearly the rule in chancery, that what ought to be done shall be considered as done."

In the case before us there is the evidence of the conveyances to John G. Brown, trustee, and of the execution of the mortgage by the railroad company to Brown, as well as to the plaintiffs, on the 9th November, 1857, the subsequent agreement made by Brown for the cultivation of the premises, in which he describes himself as agent and signs himself as agent, thereby disclaiming an ownership in himself as an individual or as a trustee. Both these instruments are incompatible with any trust estate continuing in Brown, and from them there is a fair presumption that he had surrendered his trust, and conveyed the property to the company.

The mortgage executed by the company to him is inconsistent with his character of trustee.

An agreement made by him as agent, and after the ex-

ecution of the mortgage, is inconsistent with any other interest in him shown by the proof than that of mortgagee.

There was sufficient evidence from which to presume a surrender of the trust and conveyance of the land to the company.

Another reason for setting aside the verdict is, that the Lexington and Danville Railroad Company, being a foreign corporation, have no power to hold lands in this state.

If this proposition is correct, John G. Brown, who is one of the mortgagees, cannot avail himself of it. By becoming a party to the mortgage he assented to the right of the company to execute it, and to its being a lien on the lands described in it. He is estopped from denying its validity.

But a further reason urged is, that Brown, being a co-mortgagee, is a co-tenant in possession, and cannot be ejected until an actual ouster is proved. It is true the possession of one as a co-tenant is the possession of all, and that possession cannot be disturbed without proof of an ouster, and hence the question arises as to what constitutes an ouster, and how the question of ouster can be presented.

By the common law practice, if one would defend for an undivided part, he was required to apply for a special consent rule, by which he would agree to confess lease and entry and ouster of the plaintiff also, if an actual ouster of his lessor were proved. If such ouster were not proved the plaintiff failed to sustain his action, but if proved he had judgment for such part of the premises as he showed title to.

If the defendant omitted to obtain the special consent rule, then, by the general consent rule, he agreed to confess the ouster, and put the plaintiff to the proof of his title only.

By our new practice act, the consent rule and all the

fictions of the common law are abolished, but provision is made for the conduct and defence of the action as fully and effectually as by the common law. The 60th section of the act, (*Nixon* 643, *pl.* 180,) directs the mode of defence by a joint tenant, tenant in common, and coparcener, and provides that he may give notice with his plea that he defends as such, and admits the right of the plaintiff to an undivided share of the property, but denies any actual ouster, which notice is to be copied as a part of the circuit record and recorded with the pleadings, and upon the trial of such issue the additional question of an actual ouster shall be tried; and if on the trial it shall be proved that the defendant is such joint tenant, tenant in common, or coparcener with the plaintiff, and no actual ouster be proved, the plaintiff shall be non-suited; but if it shall be proved either that the defendant is not such joint tenant, tenant in common, or coparcener, or that an actual ouster has taken place, the jury shall so find by their verdict.

That issue was required to be raised by the common law practice by the consent rule, by our present practice act by the notice given with the plea and on the general principle of pleading, that what the party does not deny he admits; if he fail to make such issue he waives the right to have the additional question of ouster tried.

If he defend for the whole, that is of itself an admission of an ouster. It is a denial of the whole right of the plaintiff. It is clearly so by our statute, and was so at common law. *Doe* v. *Prosser, Cowper's R.* 218.

In that case Lord Mansfield said that a refusal to pay part of the rents was not sufficient without denial of the title, but if on demand by a co-tenant of a moiety, the other denies to pay and denies the title, saying he claims the whole and will not pay, and continues in possession, such possession is adverse and is an ouster.

Willes, J., in the same case, said, " However strict the notion of actual ouster may formerly have been, I think adverse possession is now evidence of actual ouster."

In the case before us no such notice was filed with the plea; the question of ouster was not raised, but defence was made to the whole premises. That was a denial of the plaintiff's whole right, a setting up of an adverse possession, and an admission of the ouster.

It is true that the plaintiff can only recover such part of the premises as his proofs have shown him entitled to, and if it appear that he is entitled only to an undivided part he shall have verdict and judgment for such part.

By the case it does not appear that the defendant was entitled to any undivided part. As mortgagee, he could only retain possession on proof of damage to him by payment of a liability on some of the bills of exchange or notes against which he was to be indemnified by the mortgage.

No such proof appears to have been made by him, and he was not beneficially entitled to retain any part of the premises.

I think, therefore, that the verdict is substantially correct, and that the rule to show cause should be discharged, with costs.