## EISEL et al. v. MILLER. *
### No. 10438.

Circuit Court of Appeals, Eighth Circuit.
June 6, 1936.

---

*Rehearing denied July 6, 1936.

Martin J. O'Donnell, of Kansas City, Mo. (John Hyde and William Buchholz, both of Kansas City, Mo., on the brief), for appellants.

Richard S. Righter and Samuel W. Sawyer, both of Kansas City, Mo. (A. W. Schutz, of Milwaukee, Wis., and Dean E. Wood and Horace F. Blackwell, Jr., both of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is a suit in equity brought by appellants against appellee, in which it is sought to quiet title to certain lands in Kansas City, Mo., to cancel certain deeds alleged to be clouds upon the title to said lands, and for an accounting.

The suit was originally brought in the state court for Jackson county, Mo., but was duly removed on account of diversity of citizenship. The bill of complaint was filed in the state court in February, 1934.

The bill of complaint was twice amended in the federal court.

The second amended bill of complaint was dismissed on its merits, upon motion by the defendant, on the grounds, as stated by the court: "That plaintiffs' second amended petition or bill in equity is wholly wanting in equity, does not state facts sufficient to constitute a cause of action and discloses on its face that the plaintiffs are not entitled to the relief prayed for or to any other relief."

From the order and judgment entered, the present appeal is taken.

The broad question presented is whether the bill stated a cause of action in equity.

The somewhat voluminous bill of complaint contains both allegations of fact and conclusions of law. It is, of course, elementary that a motion to dismiss admits only the well-pleaded allegations of fact.

From the bill of complaint we gather the following allegations of fact: On and prior to December 7, 1910, Louis Eugene Schattner, father of the plaintiffs, was the owner of an undivided three-fourths interest in certain real estate in Kansas City, Mo. On that day he, his wife joining, made, executed, and delivered to William T. Jamison, as trustee, a deed (Exhibit A, set out in the margin[1]), covering an undivided one-half interest in the said real estate. On the same day, said Schattner, his wife joining made, executed, and delivered a similar deed (Exhibit B) to the Fidelity Trust Company,

[1] "Exhibit 'A'.
"Warranty Deed.
"This Indenture, made on the 7th day of December A. D. One Thousand Nine Hundred and Ten, by and between Louis Eugene Schattner, and Ada Schattner, his wife, of the County of Jackson, State of Missouri, parties of the first part, and William T. Jamison, as Trustee, of the County of Jackson, State of Missouri, party of the second part,
"Witnesseth, That said parties of the first part, in consideration of the trust hereby created, and the sum of One Dollar ($1.00) and other good and valuable considerations, to them paid by the said party of the second part (the receipt of which is hereby acknowledged) do by these presents, grant, bargain and sell, convey and confirm unto the said party of the second part, his successors and assigns, the following described lots, tracts or parcels of land, lying, being and situate in the County of Jackson and State of Missouri, to-wit:·
"All of that undivided one-half (½) of the following described property, being owned in his own right and not as heir at law, or next of kin of his brother, Charles Schattner, deceased, to-wit:

George Kumpf and William T. Jamison, as trustees, covering his remaining undivided one-fourth interest in said real estate.

Schattner died January 19, 1911. Mrs. Schattner died in 1929. July 10, 1911, Jamison, as trustee, made an alleged deed of an undivided one-half interest in the real estate to Ernest G. Miller. On the same day, the trustees named in the other conveyance (Exhibit B), made an alleged deed of \the undivided one-fourth interest in the real estate to the same party. September 1, 1925, Ernest G. Miller made an alleged deed of the undivided three-fourths interest in the real estate to appellee, Fred Miller. Ernest G. Miller died in 1929.

Plaintiffs are heirs at law of said Louis E. Schattner.

Defendant has refused to account to plaintiffs for the rents and profits of said real estate.

An examination of the deed, Exhibit A, discloses that it does not state the terms of the trust mentioned, nor the names of the beneficiaries. The same is true of Exhibit B.

The position of appellants as to the two deeds, Exhibits A and B, is thus stated in their brief:

"Exhibits 'A' and 'B' were instruments creating the alleged trusts, which instruments failed to state the terms of the trusts or to name beneficiaries, and, therefore, said instruments merely created dry trusts and the trustees held the mere legal title to the lands for the use of the settlor until his death and after his death for the use and benefit of his heirs, and, therefore, to the knowledge of defendant, the trustees were without power to make the alleged deeds of conveyance to Ernest G. Miller, and hence defendant holds the legal title to the real estate and its profits for plaintiffs.

"Exhibits 'A' and 'B' merely vested the title of record in the persons named as trustees, but section 3103, R.S.Mo. 1929 (Mo.St. Ann. § 3103, p. 1926), immediately vested the beneficial interest in the deceased and after his death in his heirs. The powers of sale referred to in 'A' and 'B' were therefore mere naked powers which were revoked by the death of the grantor."

Section 3103 of the 1929 Missouri Statutes (Mo.St.Ann. § 3103, p. 1926) is set out in the margin.[2]

We cannot agree with the contentions thus made by appellants. The real estate being situated in Missouri, the statutes of that

---

"Lot numbered Sixty-four (64) and the north four and one-half (4½) feet of Lot numbered Sixty-five (65) in McGee's Addition, an addition to the city of Kansas (now Kansas City), Missouri, it being intended to convey all of said described property lying south of Twelfth Street, and West of Main Street, in Kansas City, Missouri. Also Lot numbered five (5), Block numbered One (1) J. H. McGee's Addition to the City of Kansas (now Kansas City), Missouri.

"Also lot numbered eight (8) Halfner's First Addition to the city of Kansas (now Kansas City), Missouri, as the said properties are shown by the recorded plats thereof in the office of the recorder of deeds, in and for Jackson County, Missouri, at Kansas City.

"To Have and to Hold unto the said Wm. T. Jamison, as trustee and unto his successors and assigns the premises aforesaid with all and singular the rights, privileges, appurtenances and immunities thereto belonging or in anywise appertaining unto the said party of the second part, and unto his successors and assigns forever; that said Louis Eugene Schattner and Ada Schattner hereby covenanting that they are lawfully seized of an indefeasible estate in fee in the premises herein conveyed; that

they have good right to convey the same, that the said premises are free and clear from any incumbrance done or suffered by them or those under whom they claim and that they will warrant and defend the title to the said premises unto the said party of the second part and unto his successors and assigns forever against the lawful claims and demands of all persons whomsoever. Said trustee shall have the power to sell said property or any part thereof upon such terms as he may deem proper and no purchaser of said real estate from said trustee shall be required or bound to inquire into the nature and purposes of the trust imposed hereby or to be in any manner concerned as to the application or disposition of the purchase money therefor.

"In Witness Whereof, the said parties of the first part have hereunto set their hands and seals the day and year above written.

"Louis Eugene Schattner, [Seal.]
"Ada Schattner, [Seal.]"

2 "§ 3103. *Operation of conveyances to use, etc.* Where any person or persons stand or be seized, or at any time hereafter shall stand or be seized, of and in any lands, tenements or hereditaments, to the use, confidence or trust of any other person or persons, or of any

state and the decisions of its highest courts are controlling as to the creation of trusts in said real estate, and as to the meaning of language contained in deeds conveying said real estate. Mut. Life Ins. Co. v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398; Munday v. Wis. Trust Co., 252 U.S. 499, 40 S.Ct. 365, 64 L.Ed. 684; Guffey v. Smith, 237 U.S. 101, 35 S.Ct. 526, 59 L.Ed. 856; Lehman v. Gumbel & Co., 236 U.S. 448, 35 S.Ct. 307, 59 L.Ed. 666.

Section 3104 of the 1929 Missouri Statutes (Mo.St.Ann. § 3104, p. 1928) is set out in the margin.[3]

■ Under this statute it is held that if there be sufficient writing to create a trust, but the terms and provisions of the trust and the name of the beneficiary be absent, they may be established by parol evidence (Bryan v. McCaskill, 284 Mo. 583, 225 S.W. 682; Sanford v. Van Pelt, 314 Mo. 175, 282 S.W. 1022); or by a separate writing (Hall v. Bank, 145 Mo. 418, 46 S.W. 1000; Ketcham v. Miller [Mo.Sup.] 37 S.W.(2d) 635). The same holding is made elsewhere. Davidson v. Mantor, 45 Wash. 660, 89 P. 167; Union Pac. Railroad Co. v. Durant, 95 U.S. 576, 24 L.Ed. 391; Loring v. Palmer, 118 U.S. 321, 6 S.Ct. 1073, 30 L.Ed. 211; Chicago, M. & St. P. Ry. Co. v. Des Moines, etc., Ry., 254 U.S. 196, 41 S.Ct. 81, 65 L.Ed. 219; Adamson v. Black Rock, etc. Co. (C.C.A.) 297 F. 905.

■ It follows that the settlor (Schattner) in the case at bar was not necessarily the beneficiary of the trusts created merely because his deeds (Exhibits A and B) of his interest in the real estate to the respective trustees omitted the terms of the trust and the name of the beneficiary. The bill does not allege that the deeds from Schattner were the only trust instruments evidencing the trust.

It is significant that the bill of complaint does not state that no beneficiaries were specified or designated for the trusts, but alleges simply that the deeds of Schattner failed to nominate a beneficiary. As shown by the authorities above cited, there were other ways of designating the beneficiaries besides naming them in the deeds (Exhibits A and B) from Schattner.

The omission from the bill of complaint of an allegation negativing the naming of any beneficiaries for the trusts rendered the bill faulty in this particular, and the defect was fatal.

It is true that the bill of complaint alleges that Louis E. Schattner was the sole beneficiary of the trusts created by the deeds, Exhibits A and B.

The bill of complaint also alleges that after the death of Schattner, the trustees named in the deeds, Exhibits A and B, held the legal title to the real estate under a dry trust for the plaintiffs as heirs at law of Schattner.

■ We think these are legal conclusions; and in construing a bill in equity to ascertain whether it is sufficient, we are not at liberty to aid or to eke out the allegations of fact with the allegations of legal conclusions.

The argument of appellants that the lan-

---

body politic, by reason of any bargain, sale, feoffment, covenant, contract, agreement, will or otherwise, by any manner of means whatsoever, in every such case all and every such person or persons and bodies politic that have, or hereafter shall have, any such use, confidence or trust, in fee simple for term of life or of years, or otherwise, or any use, confidence or trust, in remainder or reversion, shall from thenceforth stand and be seized, deemed and adjudged in lawful seisin, estate and possession of and in the same lands, tenements and hereditaments, with their appurtenances, to all intents, constructions and purposes in law, of and in such like estates, as they had or shall have in use, confidence or trust of or in the same; and that the estate, right, title and possession that was or shall be in such person or persons, that were or hereafter shall be seized of any lands, tenements or hereditaments, to the use,

confidence or trust of any such person or persons, or of any body politic, be from henceforth clearly deemed and adjudged to be in him, her or them that have or hereafter shall have such use, confidence or trust, after such quality, manner, form or condition as they had before in or to the use, confidence or trust that was or shall be in them."

[3] "§ 3104. *Declarations of trust to be in writing or by will.* All declarations or creations of trust or confidence of any lands, tenements or hereditaments shall be manifested and proved by some writing signed by the party who is, or shall be, by law, enabled to declare such trusts, or by his last will, in writing, or else they shall be void, and all grants and assignments of any trust or confidence shall be in writing, signed by the party granting or assigning the same, or by his or her last will, in writing; or else they shall be void."

guage of the deeds, Exhibits A and B, excludes the possibility that the settlor named the beneficiaries elsewhere or executed other instruments setting out the terms of the trust, does not appeal to us. The words in Exhibit A, "the trust hereby created," and the words in Exhibit B, "the trust imposed hereby," do not tend to such a conclusion when the whole of the instruments, Exhibits A and B, is considered.

■ Leaving out of consideration, however, the question whether an active, valid trust was possibly created by Schattner by the deeds, Exhibits A and B, aided perhaps by other evidence; and assuming that no such trust was created; yet we must carefully consider the provisions of Exhibits A and B in determining whether a dry trust was the result. In Exhibits A and B we find the following provisions: That the grantors "do by these presents, grant, bargain and sell, convey and confirm unto the said party of the second part, his successors and assigns, the following described lots * * * "; also the following provision: "To Have and to Hold unto the said Wm. T. Jamison, as trustee and unto his successors and assigns the premises aforesaid with all and singular the rights, privileges, appurtenances and immunities thereto belonging or in anywise appertaining unto the said party of the second part, and unto his successors and assigns forever; that said Louis Eugene Schattner and Ada Schattner hereby covenanting that they are lawfully seized of an indefeasible estate in fee in the premises herein conveyed; that they have good right to convey the same; that the said premises are free and clear from any incumbrance done or suffered by them or those under whom they claim and that they will warrant and defend the title to the said premises unto the said party of the second part and unto his successors and assigns forever against the lawful claims and demands of all persons whomsoever. Said trustee shall have the power to sell said property or any part thereof upon such terms as he may deem proper and no purchaser of said real estate from said trustee shall be required or bound to inquire into the nature and purposes of the trust imposed hereby or to be in any manner concerned as to the application or disposition of the purchase money therefor."

No claim of fraud is made. The above-quoted provisions in the deed, and especially the provision that "no purchaser of said real estate from said trustee shall be required or bound to inquire into the nature and purposes of the trust imposed hereby or to be in any manner concerned as to the application or disposition of the purchase money therefor," was a direct assurance of authority in the trustees to make the sale, and relieved a reasonably prudent purchaser from the duty of inquiring as to the power of the trustees to make the sale. Huntoon v. So. Trust & Commerce Bank, 107 Cal.App. 121, 290 P. 86.

■ The vesting of the legal title in the trustees with this power of sale created a power coupled with an interest, and this power survived the death of the grantor. 21 R.C.L., pp. 775, 809; Hunt v. Rousmanier's Adm'rs, 8 Wheat. 174, 5 L.Ed. 589; Wilson v. Snow, 228 U.S. 217, 33 S.Ct. 487, 57 L.Ed. 807, 50 L.R.A.(N.S.) 604; State ex rel. Walker v. Walker, 88 Mo. 279; White v. Stephens, 77 Mo. 452; Wallace v. Foxwell, 250 Ill. 616, 95 N.E. 985, 50 L.R.A.(N.S.) 632.

■ Nor do we think that the powers of sale given to the trustees in the deeds, Exhibits A and B, by Schattner, violate the rule against perpetuities. It will not be necessary to enter into an extended discussion as to this matter. See 48 C.J. 980, 49 C.J. 1283; Trautz v. Lemp, 329 Mo. 580, 46 S.W.(2d) 135; see, also, Shoemaker v. Newman, 62 App.D.C. 120, 65 F.(2d) 208, 89 A.L.R. 1034, and note.

Nor do we find it necessary to discuss the Missouri statute of limitations, or the doctrine of laches, both of which have been raised and argued by counsel in the case.

■ We content ourselves by quoting the general rule in equity as to pleading excuses for laches, given by Pomeroy in his "Equitable Remedies" (1905 Ed.) at page 62:

"Sec. 36. *Pleading Excuses for Laches.* —'The party who appeals to the conscience of the chancellor in support of a claim, when there has been laches in prosecuting it, or long acquiescence in the assertion of adverse rights, should set forth in his bill, specifically, what were the impediments to an earlier prosecution of his claim, how he came to be so long ignorant of his rights, and the means used by the respondents to fraudulently keep him in ignorance; and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the chancellor must refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer.'"

We think the bill of complaint in the case at bar did not meet the requirements of the rule.

Our conclusion is that the trial court rightly dismissed the bill of complaint; and the judgment is accordingly affirmed.