GRADY SANFORD and F. M. McDAVID, Executors of Estate of W. B. SANFORD, Appellants, v. E. F. VAN PELT et al.

Division One, April 12, 1926.

1. **TRUST: Manifestation: Conveyance to Grantee as Trustee: Undisclosed Beneficiary or Purpose: Parol Evidence.** The fact or existence of a trust, and not its terms or the beneficiary, is what the statute

(Sec. 2263, R. S. 1919) requires shall be manifested and proved by some writing signed by the party. The word "trustee" inserted in a deed immediately after the name of the grantee, is not *descriptio personae*, but implies that the grantee is not the owner of the property conveyed, but holds the legal title for the use and benefit of someone else, and has no right to sell or dispose of it without the consent of the beneficiary; and where neither the beneficiary nor the purpose of the trust is disclosed by the instrument, parol evidence is competent to show both. And particularly so, where the conveyance was by a quit-claim deed expressing a nominal consideration, thereby showing it was a voluntary conveyance, made without a valuable consideration passing from the grantee to the grantor. So that where the owner of a lot by quit-claim deed, for an expressed consideration of one dollar, conveyed it to "T. B. Holland, trustee," without expressing for what purpose the title was to be held or for whose benefit, the fact or existence of the trust was manifested and proved by a writing, and the grantee was not the beneficial owner of the lot, but parol evidence was competent to show that the grantor was the grantee's son-in-law; that they had long been associated in the banking business; that the lot did not border on a street, but adjoined another lot belonging to the grantee which did front on a street, and that the purpose of the conveyance was that the grantee might sell both lots together as one body, and the proceeds be divided according to their interests, and if not sold that the lot conveyed would later be given to the grantor's son.

2. **WITNESS: Trust: Conveyance to Trustee: Undisclosed Beneficiary and Purpose: Deceased Grantee: Resulting Trust.** Notwithstanding the deed to "T. B. Holland, trustee" manifested and created a trust, and notwithstanding the deed did not name the beneficiary or state the purpose of the trust and parol evidence is admissible to prove both, the grantee being dead the grantor is not a competent witness to prove either the beneficiary or the purpose. Nevertheless, the law does not permit the grantee's heirs or devisees to hold or convey the legal title, but if the trust fails because of indefiniteness and uncertainty, or because it is impossible to prove its purposes or the beneficiaries, a resulting trust arises in favor of the grantor by operation of law.

3. **TRUST: Undisclosed Beneficiary and Purpose: Impossible Proof: Resulting Trust.** The voluntary deed having conveyed the lot to "T. B. Holland, trustee," without mentioning the beneficiary or the purpose of the trust, and it being impossible to prove either because the grantee has died without a consummation of the trust purpose, whatever it was, the trust fails for indefiniteness and uncertainty, and a resulting trust arises in favor of the grantor by operation of law. In such case the grantee, or his heirs or devisees, do not be-

.come the beneficial owner, and cannot claim to be absolute owners, because the deed did not convey to the grantee an absolute title, but conveyed to him only the legal title for some undefined trust purpose; and the purpose and beneficiaries being undisclosed, and the trust therefore failing for indefiniteness and uncertainty, a resulting trust in favor of the grantor, or if he be also dead, in favor of his heirs or devisees, arises by operation of law.  Nor will it be held that a resulting trust does not arise because it cannot be shown that the trust, if proved, was illegal or incapable of performance; the trust fails for indefiniteness and uncertainty, where it is impossible to prove either the beneficiary or its purpose.

4. **EXPRESS TRUST: Failure: Resulting Trust.**   An express trust is one which is created by the direct or express words of a grantor or settler, or by the intentional act of the party having dominion over the property, done with the view of creating a trust.  A voluntary conveyance of a lot to "T. B. Holland, trustee" created an express trust, although it did not name the beneficiary or purpose of the trust; and upon its failure for indefiniteness and uncertainty, a resulting trust, which is one arising by operation of law and is the creature of equity, arises in favor of the grantor.  In such case the rule that an express trust cannot be transferred into a resulting trust for want of legal evidence in writing to prove the fact or existence of an express trust, does not apply, because the deed itself creates an express trust, and that rule does not apply where it appears from the instrument itself that the legal and beneficial estates are to be separated.

5. **RESULTING TRUST: Character of Proof.**  The rule that clear, cogent and convincing proof is necessary for the establishment of a resulting trust has no application where the intention of the grantor that the legal and beneficial estates are to be separated appears on the face of the instrument creating the trust, and the resulting trust arises by operation of law because of the indefiniteness and uncertainty of the trust, due to lack of competent evidence to establish its terms.

Corpus Juris-Cyc. References: Evidence, 22 C. J., Section 1210, p. 970, n. 14.  Trusts, 39 Cyc., p. 25, n. 67; p. 34, n. 48; p. 35, n. 66; p. 58, n. 23; p. 110, n. 47; p. 111, n. 52; p. 166, n. 89. Witnesses, 40 Cyc., p. 2295, n. 54.

Appeal from Greene Circuit Court.—*Hon. Orin Patterson,* Judge.

REVERSED AND REMANDED (*with directions*).

*John T. Sturgis* for appellant.

(1) While express trusts can only be proven by writing, the deed from Sanford to "T. B. Holland, trustee" and reciting a mere nominal consideration is a sufficient writing to evidence that Holland did not take or hold the property as a purchaser or owner, but as trustee for a third party. That the property was so held in trust is proven by the written conveyance to Holland, trustee, and it would be competent to prove by parole evidence the nature of the trust and the beneficiaries of same. The fact of the trust and not its terms or the beneficiaries is what must be shown by writing, and that is accomplished by the use of the word "trustee" after the name of the grantee in this deed of gift. Union Pac. Railroad Co. v. Durant, 95 U. S. 576; Johnson v. Colnan, 19 Colo. 168; H. B. Claflin & Co. v. King, 48 So. 36; Flitchcroft v. Trust Co., 60 Atl. 557; Erskine v. Russell, 96 Pac. 250.; Mahrburg v. Ehlen, 19 Atl. 648; Farmers Loan & Tr. Co. v. Essex, 71 Pac. 270; Farrington v. Stuckey, 165 Fed. 325; Snyder v. Collier, 123 N. W. 1075.; Mercantile Natl. Bank v. Parsons, 155 N. W. 826. (2) Where the trust attempted to be created failed for uncertainty or the particular trust is so indefinite and uncertain that it cannot be enforced or carried into effect, or lapses or is illegal, the law does not permit the trustee to retain the property as his own free from the trust, but a trust, arises by operation of law in favor of the grantor or his heirs and legal representatives. This is especially true when the failure of the trust is brought about by the repudiation of the trust relation by the grantee and his refusal to carry out any trust in relation to the property. Johnson v. Colnan, 34 Pac. 905; 3 Pomeroy's Equity, secs. 1032 and 1009, note 2; 26 R. C. L. 1216; 39 Cyc. 109, 110; Sims v. Sims, 64 Am. St. 772; Saylor v. Plain, 31 Md. 158.; Holland v. Allcock, 2 Am. St. 422; Nichols v. Allen, 130 Mass. 211; Heidenmeyer v. Bauman, 84 Tex. 174.; Easum v. Bohn, 180 Ky. 451; McHugh v. McCole, 40 L. R. A. 724; School Land

Com. v. Wadhams, 20 Ore. 274; Williams v. Com. Baptist Church, 92 Md. 497; 27 Cyc. 862; Keane v. Beard, 11 Mo. App. 10. (3) While it is necessary in applying the doctrine that where the trust fails for any cause or is void for uncertainty or cannot be enforced, a resulting trust arises in favor of the grantor or donor, that the instrument attempting to create the trust must show that the grantee did not take same as owner or as having a beneficial interest, that is done by the use of the word trustee after grantee's name. The word "trustee" following the name of the grantee in a deed is not *descriptio personae,* but means and shows that such grantee takes the title in trust for some third person and not as owner or for his own benefit. One accepting a deed as trustee cannot deny the trust relationship and assert title in himself. Union Pac. Railroad v. Durant, 95 U. S. 576; Johnson v. Calman, 34 Pac. 908; H. B. Claflin & Co. v. King, 48 So. 36; Geyser Gold Mining Co. v. Stark, 106 Fed. 558; Sternfels v. Watson, 139 Fed. 507; Farmers Loan Co. v. Essex, 71 Pac. 270; Farrington v. Stucky, 165 Fed. 328; Snyder v. Collier, 123 N. W. 1023; Moffet v. Oregon Railroad, 91 Pac. 489; Welles v. Larabee, 36 Fed. 860. (4) That T. B. Holland was not a purchaser for value is shown (in addition to the word "trustee" after his name) by the form of the conveyance and the recited consideration of one dollar. One dollar is a mere nominal consideration, and imports that nothing of value was paid. Strong v. Whybank, 204 Mo. 341; Johnson v. Calman, 19 Colo. 168; 3 Pomeroy's Equity, sec. 1035; Edmonds v. Scharff, 279 Mo. 78; Scharff v. McGaugh, 205 Mo. 344.

*Mann & Mann* for respondents.

(1) Assuming for the sake of argument that the word "trustee" in the conveyance from Sanford to Holland was not merely *descriptio personae,* but was in fact a conveyance expressed by the word "trustee" to be in trust, then the trust was an express trust. R. S.

1919, sec. 2263. It was not a resulting trust because it did not arise or result by implication of law. R. S. 1919, sec. 2264. It was, if said deed declared at all, or established a trust at all, an express trust. Heil v. Heil, 184 Mo. 665; Hillman v. Allen, 145 Mo. 638; Dexter v. Mac-Donald, 196 Mo. 373; Thomson v. Thomson, 211 S. W. 56; Crawley v. Crafton, 193 Mo. 431; Price v. Kane, 112 Mo. 419. (2) The alleged trust upon which the lot in controversy was conveyed by Sanford to "T. B. Holland, trustee," having been conveyed, if upon any trust at all, upon an express trust, no resulting trust can arise. It cannot be transferred into a resulting trust merely for the want of legal evidence to enforce it as an express trust. Heil v. Heil, 184 Mo. 677; Hillman v. Allen, 145 Mo. 644; Green v. Cates, 73 Mo. 115. (3) There are no elements of resulting trust in the case. R. S. 1919, sec. 2264. In any event the evidence is totally inadequate to establish a resulting trust. While a resulting trust is one that arises by implication of law, yet it devolves upon the parties seeking to establish it to affirmatively prove the facts and all the constituent elements out of which a resulting trust arises by evidence so clear, cogent and sufficient as to establish such trust beyond a reasonable doubt. Rogers v. Rogers, 87 Mo. 257; Hillman v. Allen, 145 Mo. 644; Curd v. Brown, 148 Mo. 82; Pitts v. Weakley, 155 Mo. 109; Heil v. Heil, 184 Mo. 677. (4) The word "trustee" after the name of T. B. Holland, grantee in the deed in question, was merely *descriptio personae*. Powell v. Morrison, 35 Mo. 244; Coaling v. Howard, 21 L. R. A. (N. S.) 1051; Sansone v. Tie Co., 139 S. W. 778; Trust Company v. Fallon, 91 N. Y. Supp. 497; King v. Townsend, 36 N. E. 513; Kanenbly v. Valkenburg, 75 N. Y. Supp. 8; Davidson v. Manter, 89 Pac. 167; Cowell v. Cole Springs Co., 100 U. S. 55. (5) It is settled law in this State that it is not necessary, in order to create an express trust, that it should be in writing; that it is only necessary that the express trust be proved in writing, signed by the party who created the same. R. S. 1919, sec. 2263; Lane v.

Ewing, 31 Mo. 75; Cornelius v. Smith, 55 Mo. 528; Mulock v. Mulock, 156 Mo. 431; Crawley v. Crafton, 193 Mo. 421.

SEDDON, C.—This is an action originally brought by William B. Sanford (now deceased) to divest defendants of the legal title to a certain described tract of land in the city of Springfield, Missouri, and to vest the same in plaintiff, said William B. Sanford. The original plaintiff having died after the cause had been appealed to this court, upon suggestion of his death in this court, by stipulation of parties the cause was revived in the name of Grady Sanford and F. M. McDavid, executors of the estate of William B. Sanford, deceased. The defendant E. F. Van Pelt is the record holder of the legal title to said land and the other defendants are respectively the widow and heirs, or devisees, of T. B. Holland, deceased.

The petition upon which the cause was tried, filed on March 9, 1918, is as follows:

"Plaintiff states that heretofore, to-wit, on the 23rd day of January, 1913, he was the owner of the following described real estate situated in Greene County, Missouri, to-wit: A lot in the city of Springfield, described as follows: Beginning two hundred and thirty-five feet south of the southwest corner of State and Campbell streets, thence west 165 feet for a new beginning point, thence south 132 feet more or less to the O'Day lot, thence west 165 feet to lot formerly owned by Adams, thence north 132 feet, thence east 165 feet to said last named beginning point.

"That said lot was of the reasonable value of $1500. That on said 23rd day of January, 1913, without consideration in fact, but by a quit-claim deed with an expressed nominal consideration of one dollar, he conveyed to 'T. B. Holland, Trustee' said land in trust for a lawful purpose. That the name of the beneficiary and the limitations of said trust were not expressed in said deed, nor were they evidenced by any writing at the time. That said T. B. Holland on the 30th day of July, 1913, departed

this life without in any manner having executed said trust, and without having in any manner entered upon the execution or recognition of same by any act or deed provable at law or in equity.

"That defendant Van Pelt is now in possession of said land claiming to own same through conveyances from some of the heirs and devisees of said T. B. Holland, but not claiming same by or through any other source. That said Van Pelt at the time he acquired said land had full notice and knowledge of said trusteeship of said T. B. Holland and that said T. B. Holland had no beneficial interest in said land, and had full knowledge and notice of all the facts herein alleged.

"That the other defendants herein are the only heirs and devisees of said T. B. Holland, and that they, although aware of said trust relationship, refuse to recognize same, and have heretofore set up and claimed a beneficial ownership in said land and have by deed conveyed said pretended claim to defendant Van Pelt.

"Plaintiff further states that on account of the fact that the name of the beneficiary of said trust, and the limitations thereof, are not evidenced by any writing, the same is not enforcible either at law or in equity, and the true intent and object thereof has therefore failed.

"Wherefore, the premises considered, the plaintiff prays the court for a decree divesting defendants and each of them of any right or title to said land and removing any and all clouds by reason of said deeds and conveyances, and for restitution of said premises and reinvesting this plaintiff with the full right and title to said land and for all such relief as to the court may seem meet and proper."

Defendants' answer is a general denial. The cause was tried by the court *nisi* without the aid of a jury.

Plaintiff offered in evidence the following agreed statement of facts:

"For the purposes of this case only and subject to all objections made or which may be made at the trial of this case as to competency and relevancy, it is hereby

stipulated and agreed that the following matters are taken and agreed upon as being true and may be considered as evidence in the trial of the above cause along with any other evidence offered and admitted at the trial thereof:

"1. It is agreed that T. B. Holland was in January, 1913, and for many years, a banker in the city of Springfield, Missouri; that he was president of the Holland Banking Company; that plaintiff, W. B. Sanford was the cashier of said banking company; that the said Sanford was formerly the son-in-law of T. B. Holland, and that they were associated for many years in the banking business together. It is further agreed that Grady H. Sanford is the son of plaintiff W. B. Sanford and the grandson of T. B. Holland, his mother, the wife of W. B. Sanford, and daughter of T. B. Holland, being deceased; that said T. B. Holland owned a large amount of real estate and personal property in January, 1913, and at the time of his death in July, 1913, and that during his lifetime he owned and handled large business interests.

"2. It is stipulated and agreed that from and after the 10th day of July, 1894, and until the 23rd day of January, 1913, William B. Sanford (mentioned herein as W. B. Sanford) owned the following tract of land located in Springfield, Missouri, and described as follows: 'Beginning 235 feet south of the southwest corner of State and Campbell streets, thence west 165 feet for a new beginning point, thence south 132 feet more or less to the O'Day lot, thence west 165 feet to the lot formerly owned by Adams, thence north 132 feet, thence east 165 feet to said last named beginning point,' being the land in controversy herein; and that said lot did not abut on any street or alley and was worth about $1,000.

"3. That on and prior to said 23rd day of January, 1913, the said T. B. Holland owned the lot immediately east of the above described lot and which fronted Campbell Street.

"4. It is further agreed that on the 23rd day of January, 1913, plaintiff, William B. Sanford, a single and unmarried man, executed a quit-claim deed in usual form, the granting clause being 'remise, release, and forever quit-claim,' and specifying the consideration as $1, for the property first above described, and that the grantee named therein was 'T. B. Holland, Trustee;' that said deed was duly executed by plaintiff Sanford and acknowledged before Harry A. Nelson, notary public, and was delivered on January 23, 1913, to said T. B. Holland. That said deed was not recorded during the lifetime of said T. B. Holland; but was shortly after his death found in his desk among his papers at the Holland Banking Company and was placed on record August 6, 1913, subsequent to his death, by his executors, said deed being recorded in Book 288 at page 633 of the Greene County land records.

"5. It is further agreed and stipulated that said T. B. Holland died testate July 30, 1913, and his last will was duly admitted to probate in Greene County, Missouri, and is considered in evidence. That said T. B. Holland did not specifically describe the lot first above mentioned, being the one now in controversy, in his said last will, but there was a residuary clause in his will devising all his property, not specifically described or mentioned, to Bertonia A. Holland, his wife. Said lot here in controversy was not specifically described or mentioned by him.

"6. It is further agreed and understood that by these admissions it is not intended to admit that said T. B. Holland owned the land here in question and first above described, nor that he did not own it.

"7. It is further admitted that the consideration recited in the quit-claim deed from W. B. Sanford to T. B. Holland, above mentioned, is $1.

"8. It is likewise agreed that E. F. Van Pelt purchased said lot from Mrs. Bertha Holland Simmons for value and paid the purchase price, taking a deed to said lot with full knowledge of the claim made by plaintiff

Sanford, the said deed conveying said lot to E. F. Van Pelt, together with the contract made between Mrs. Bertha Holland Simmons and husband with the said E. F. Van Pelt, being considered in evidence; that Bertonia Holland was the residuary legatee in the will of T. B. Holland; that the lot immediately in front of the one in consideration was willed to Bertha Simmons, a daughter of T. B. Holland, and that Bertonia Holland gave a deed to the land here in question to Bertha Simmons, who in turn conveyed it to E. F. Van Pelt."

Plaintiff also offered in evidence a written agreement, dated April 17, 1916, by and between defendant Bertha Holland Simmons and husband, parties of the first part, and defendant E. F. Van Pelt, party of the second part, which agreement, in substance, recites the sale and conveyance of the land in controversy, together with the adjoining tract of land on Campbell Street, by parties of the first part to parties of the second part, and that "the first parties became seized of said land by the will of the late T. B. Holland, who at the time of his death held that part of the above described land hereinafter described (being the land in controversy) as trustee, . . . and the deed conveying said lot to the said T. B. Holland not expressly providing to whose use or benefit he held said land as trustee, and the first parties realizing that some person or persons may hereafter claim some right, title or interest in the said land under the said trustee's deed, and being willing to fully warrant and defend the title to said property, conveyed to second party, against any claim that may or might hereafter be made by any person or persons by reason of said trustee's deed," therefore the parties of the first part will defend the title to the land in controversy at their own expense against any and all future or anticipated claimants of the title by reason of said deed to T. B. Holland, trustee, or against any suit or action that may be brought thereon.

Plaintiff also offered in evidence the pleadings filed and the judgment entered in the Circuit Court of Greene

County in a former action involving the same subject-matter brought by Grady H. Sanford, son of said William B. Sanford, as plaintiff, against the same parties defendant in the instant action. The object and nature of the former suit is best shown by the petition filed therein, which is as follows:

"Comes now the plaintiff and for cause of action states that Bertonia A. Holland, one of the defendants herein, is the widow of T. B. Holland, deceased, and that Charles Holland, Edith Holland Darby, Bertha Holland Simmons and Louise Holland Jarrett are children of the said T. B. Holland, deceased; that the other defendants are the husbands and wives of said parties above named. That Charles H. Van Pelt is the husband of E. F. Van Pelt. The plaintiff further states that on the 23rd day of January, 1913, the father of this plaintiff, W. B. Sanford, was the owner in fee simple of the following described tract of land located in the city of Springfield, Missouri, to-wit: Beginning 235 feet south of the southwest corner of State and Campbell streets; thence west 165 feet for a new beginning point; thence south 132 feet more or less to the O'Day lot; thence west 165 feet to a lot formerly owned by Adams; thence north 132 feet; thence east 165 feet to the last named beginning point.

"That on said date, to-wit, on the 23rd day of January, 1913, the said W. B. Sanford conveyed said property to 'T. B. Holland, Trustee,' and that such conveyance was made to the said T. B. Holland in trust for this plaintiff, and that he became by reason of such conveyance and now is the beneficial owner of the land above described.

"Plaintiff further states that T. B. Holland died on the 31st day of July 1913, without having conveyed said property to this plaintiff or having otherwise executed the trust under which he held title to this property. It is further stated by plaintiff that the land was conveyed by the said W. B. Sanford to T. B. Holland, trustee, with the understanding and agreement that the

same should be by said Holland conveyed along with another certain tract of land adjoining same to this plaintiff, but that such conveyance never was in fact made.

"Plaintiff further states that the defendant, Bertha Holland Simmons and D. M. Simmons, her husband, on the 17th day of April, 1916, executed to E. F. Van Pelt, one of the defendants herein, a warranty deed to said land above described, and that said Van Pelt together with all of the other defendants claim to have an interest in said above-described land. The said Van Pelt as purchaser under said deed and the other defendants as heirs at law of said T. B. Holland, deceased, claim to have an interest in said land.

"Plaintiff further states that it will be necessary in order to effectuate and carry out the purpose and intent of the trust created by the conveyance aforesaid that a new trustee shall be appointed.

"Wherefore, plaintiff prays this court to declare that said T. B. Holland held said land above described in trust for this plaintiff and that this plaintiff is the beneficial owner of the title thereto; that the defendants, nor either of them, have any interest in said land; that the deed executed by Bertha Holland Simmons and D. M. Simmons to E. F. Van Pelt, be cancelled and for naught held, and that the court shall appoint a trustee to make conveyance of said land pursuant to the purpose and intent of the trust under which the said Holland took title thereto, and plaintiff prays for such other and further relief as to the court he may seem entitled under the facts in the case and that he may have and recover his costs laid out in this case."

The answer in that suit was a general denial, and the judgment therein, entered on March 2, 1918, was in favor of defendants and against plaintiff, Grady H. Sanford, the circuit court adjudging "that plaintiff take nothing by this suit, but that plaintiff's bill is dismissed and that defendants go hence without day."

Thereupon, plaintiff William B. Sanford, appearing as a witness in his own behalf, was asked on direct examination:

"Q. Mr. Sanford, I will ask you what contract or understanding, if any, was had between you and T. B. Holland at the time and in connection with the deed which you made to said T. B. Holland, as trustee, and the purpose for which said deed was made?"

Defendants objected to the question, for the reason that plaintiff's petition and the testimony thereunder show that said T. B. Holland is dead, which disqualifies the witness and renders him incompetent to testify. The objection was sustained, whereupon plaintiff offered to prove by said witness that, at the time said deed was executed and delivered, "it was made under an understanding and agreement, that, on account of T. B. Holland owning the land fronting on Campbell Street, and the plaintiff's land not being accessible to any street, the plaintiff's land (in controversy) would be deeded to T. B. Holland, as trustee, under the agreement that the land would all be sold as a body and the proceeds divided according to their interests, and if not so sold, that the whole tract would later be given to Grady Sanford." Upon objection of defendants that the witness was incompetent to testify and, furthermore, that an express trust can only be proved by writing and not by parol evidence, the offer of proof was refused.

F. M. McDavid testified that he is a practicing lawyer in Springfield; that he was acquainted with T. B. Holland in his lifetime; that he was called by T. B. Holland to write Holland's will, and that Mr. Holland consulted with witness from time to time and on numerous occasions regarding the disposition he desired to make of his property.; Mr. Holland made a list of his properties, describing them by names, mostly, rather than by legal descriptions, as, for instance, the Morrison Building, the McGregor-Noe Building, etc.; he gave the names of the property, or rather the general location of the property, ordinarily referring to the properties by

name; witness obtained the legal descriptions from other and various sources; witness thought that Holland knew definitely every piece of property he owned; witness listed in the will all the properties that Mr. Holland gave him a list of; witness obtained the legal descriptions of the various properties and went over the descriptions with Mr. Holland and he didn't mention any other properties than those described in his will; witness put a residuary clause in the will, as he always does in writing a will; there were several drafts made of the will, three or four at least; all of these drafts were submitted to Mr. Holland and he read them over and made suggestions of several changes therein; finally, after changes were made in the will, testator expressed satisfaction with the final draft of his will, and the will was signed by the testator and properly witnessed; Mr. Holland by his will disposed of the lot or tract of land on Campbell Street (being the tract of land immediately adjoining the land in controversy); the will devised that tract to his daughter, Bertha Holland Simmons.

"Q. Now, in connection with that, I will ask you, what, if anything, Mr. Holland said about wanting to dispose of or put in his will a tract of land still west of that, but not fronting on the street, a tract of similar size? A. He never mentioned any other tract than was described here. He mentioned the tract fronting on that street. I have forgotten just what he called this property. I call it the Campbell Street tract and this description here is as it was written in the will and the only description that I had of this property. I wouldn't say he gave it to me, but I know that he mentioned the Campbell Street tract.

"Q. What, if anything, did he say about owning another tract adjoining it? A. He said nothing."

Cross-examination: "He mentioned the Campbell Street tract. He had some name for it. . . . When Mr. Holland spoke to me about writing his will, he referred to his property in general terms, such as the McGregor-Noe Building, and the Heer Building. That

was one of his methods of describing his property and telling me what he owned. He also mentioned the Woolworth Building and a building on College Street and the Morrison Building. He told me to get the descriptions and told me he wanted me to write it up. He told me to get the descriptions from the bank and Mr. Sanford and Guy Mitchell, and that the abstracts were there and the tax receipts. He didn't pretend to give me the descriptions in metes or bounds, nor how wide was any property or how many feet it contained.''

The last will and testament of T. B. Holland, dated June 17, 1913, and admitted to probate on August 19, 1913, was introduced in evidence. The tract of land in controversy is not mentioned or referred to in said will. The adjoining tract of land on Campbell Street is described by metes and bounds, and devised, by clause eight of said will, to Bertha Holland Simmons. By other clauses of the will certain specific properties and moneys are devised and bequeathed to other children of the testator and to Bertonia Holland, wife of the testator. The residuary clause of the will is not set out in the abstract of the record, but the agreed statement of facts in evidence recites that there is a residuary clause in the will of T. B. Holland devising all of his property, not specifically described or mentioned in said will, to his wife, Bertonia A. Holland, and that the tract of land in controversy was not specifically described or mentioned by the testator in his will.

The foregoing was all the evidence offered by plaintiff. The defendants offered no evidence, and the cause was thereupon submitted to the trial court and taken under advisement. On May 14, 1923, the trial court entered a judgment, finding the issues for the defendants, dismissing plaintiff's petition, and taxing the costs against plaintiff. In due time, plaintiff filed a motion for new trial, upon the overruling of which motion, plaintiff filed his application and affidavit for appeal and was granted an appeal to this court.

I.  Appellants contend that the real property in controversy was held in trust by T. B. Holland, and that the fact or existence of the trust is sufficiently proved by writing signed by the grantor and creator of the trust, William B. Sanford, and evidenced by the quitclaim deed of conveyance from William B. Sanford to T. B. Holland, "trustee," which recites upon its face a mere nominal consideration of one dollar, thereby showing that no valuable consideration passed from the grantee to the grantor.  It is furthermore contended by appellants that the *fact or existence of the trust,* and not its terms or the beneficiary thereof, is what the statute of this State (Sec. 2263, R. S. 1919) requires shall be proved or evidenced by writing, and, therefore, the nature or terms of the trust and the beneficiary thereof may properly be shown by parol testimony.

*Trust: Manifestation: Undisclosed Beneficiary or Purpose: Parol Evidence.*

Section 2263, Revised Statutes 1919, provides: "All declarations or creations of trust or confidence of any lands, tenements or hereditaments shall be manifested and proved by some writing signed by the party who is, or shall be, by law, enabled to declare such trusts, or by his last will, in writing, or else they shall be void, and all grants and assignments of any trust or confidences shall be in writing, signed by the party granting or assigning the same, or by his or her last will, in writing, or else they shall be void."

The foregoing statute is a re-enactment, almost in exact words, of the seventh and ninth sections of the English Statute of Frauds, enacted during the reign of Charles II. (29 Car. II., c. 3, secs. 7 and 9.)  Speaking of the force and effect of the English statute aforesaid with respect to trusts in real estate, Perry on Trusts and Trustees (6 Ed.) vol. 1, sec. 79, says: "They need not be *created and declared in writing,* but only *manifested* or *proved* by writing; for if there be *written evidence of the existence of the trust,* the danger of parol evidence, against which the statute was directed, is effec-

tually removed." Again, in Section 81 of the same work, the learned text-writer says: "In practice, the great majority of trusts are not created by a deed or conveyance of land, but they arise from the transactions and agreements of parties; and if these transactions or agreements are *evidenced* in writing, the trust is sufficiently created, declared, manifested or proved." (Italics ours.)

In Union Pacific Railroad Co. v. Durant, 95 U. S. 576, certain deeds conveying real estate were made to defendant as grantee and trustee. The deeds did not state the nature and purposes of the trust or name the beneficiary thereof. Said the Federal Supreme Court, speaking through Mr. Justice SWAYNE: "All the deeds but one designate the appellee as 'trustee,' without setting forth for whom or for what purpose. *Parol evidence was admissible to show these things.* The designation alone was sufficient to devolve the duty of inquiry upon any third person dealing with the property. [Duncan v. Jaudon, 15 Wall. 165; Shaw v. Spencer, 100 Mass. 321; Sharp v. Taylor, 2 Ph. 801; McBlair v. Gibbs, 17 How. 232; Brooks v. Martin, 2 Wall. 70.] The appellee cannot claim adversely to those for whom he acquired and holds the property. The rights of others, if such rights exist, do not concern him. He cannot vicariously assert them. . . . The position assumed by the trustee in this case is not unlike that of one who, having deprived the owner of the possession of his property, when called to account civilly or criminally, should insist that the owner's title was fatally tainted with fraud, and that hence the offender had the right to 'take and carry away,' and keep and enjoy, the property himself with impunity. The conduct of the appellee, stripped of the verbiage with which it has been surrounded, and viewed in its nakedness, strongly offends the moral sense of the judicial mind."

In Johnson v. Calnan, 19 Colo. 168, the appellees had conveyed by special warranty deed a certain tract of land to appellant, "trustee." It was held that the writ-

ten deed evidenced the existence of a trust, thereby opening the door to the admission of parol evidence to show the truth of the transaction. In ruling the question, the court said: "Under the foregoing statute (of frauds), it has been held that the existence of a direct or express trust in lands cannot be established by parol evidence. [Von Trotha v. Bamberger, 15 Colo. 1.] But where there is some written evidence showing the existence of a trust, the door is thereby opened to the admission of parol evidence to show the truth of the transaction. [Hill on Trustees, 61, 62; 2 Sugden on Vendors (14 Ed.) 437; Browne on Statutes of Frauds (3 Ed.) sec. 111; 1 Perry on Trusts, sec. 78, et seq.; Bohm v. Bohm, 9 Colo. 106.] By their special warranty deed of January 6, 1887, plaintiffs conveyed the twenty-acre tract of land to defendant, naming him 'trustee' in the deed. . . . The word 'trustee' inserted after the name of the grantee in the deed executed by plaintiffs, and also affixed by defendant to his signature to the receipt, would seem to indicate something more than a mere *descriptio personae;* as a description of the person the word thus used is too general to amount to anything; as a description it does not identify anyone. In our opinion, the word, 'trustee,' under the circumstances, indicates the intention of the parties that the grantee was to take the title, not in his individual capacity, but *in trust* for another, though the name of his *cestui que trust* is not disclosed by the deed. In Railroad Co. v. Durant, 95 U. S. 576, 579, where a certain person was designated as 'trustee' in certain deeds 'without setting forth for whom or for what purpose,' it was held that 'parol evidence was admissible to show these things.' The authorities upon this point are not altogether clear or uniform; but we are of opinion that the Durant case announces a proper rule for the determination of the present controversy. [Shaw v. Spencer, 100 Mass. 393; Brown v. Combs, 29 N. J. L. 36; Selden's Appeal, 31 Conn. 548; 2 Pomeroy's Eq. Juris., secs. 1009, 1010.]" The foregoing case was

314 Mo.—13.

cited with approval in the subsequent case of Erskine v. Russell, 43 Colo. 449, 96 Pac. 249.

In Farmers' Loan & Trust Co. v. Essex, 71 Pac. (Kan.) 268, a written assignment of a mortgage was made to "Farmers' Loan & Trust Company, trustee." In construing the force and effect of the written assignment, that court said: "No one who might read in the records of the office of the register of deeds an assignment of one mortgage to the 'Farmers' Loan & Trust Company,' and an assignment of another to the 'Farmers' Loan & Trust Co., trustee,' could fail to distinguish the difference in capacity, disclosed by the two instruments. . . . That the single word 'trustee' is of itself sufficient to import a trust relation, there can be no doubt. Condensation and conciseness of description in instruments evidencing commercial transactions are to be commended, when not destructive of clearness. There can be nothing magical in the use of the word 'as,' and the addition of the names of the beneficiaries would only make certain their number and identity. Without this a trust of some character for some one is nevertheless disclosed, which is sufficient for all purposes of the law. . . . The conclusion, therefore, must be that the word 'trustee,' in the assignment to plaintiff in error, was not a mere description of the person; that it imported a representative character in the assignee; that the record of the instrument informed all persons dealing with the land of the limited capacity of such assignee." To similar effect are Flitcraft v. Title Insurance and Trust Co., 211 Pa. St. 114, 60 Atl. 557, and H. B. Claflin Co. v. King, 56 Fla. 767, 48 So. 37.

Respondents, on the other hand, insist that the word "trustee" after the name of T. B. Holland, the grantee in the deed in question, is merely *descriptio personae* and that Holland therefore took an absolute title in fee simple to the land conveyed. In support thereof, respondents rely upon the ruling of this court in Powell v. Morrison, 35 Mo. 244, wherein the Sheriff of St. Louis County made a sale of lands under a judgment in

partition and took back a deed of trust and notes, executed by the purchasers of said lands, evidencing deferred payments of the purchase price. The notes were made payable to the order of James Castello, Sheriff of St. Louis County, and the deed of trust securing payment of said notes described the beneficiary as "James Castello, Sheriff of the County of St. Louis." The sheriff endorsed one of the notes thus: "James Castello, Sheriff," and through a street-broker sold the note to defendants, who collected from the makers of the note. Plaintiff, who was a party to the partition suit, brought suit to recover of the defendants a portion of the proceeds of the note equal to plaintiff's interest in the land. The question involved was whether defendants purchased the note with notice of plaintiff's interest. The court ruled that defendants were purchasers without notice. In ruling the point, BATES, J.; speaking for this court, said: "The principal question, therefore, is as to the effect of the words on the face of the note, 'Sheriff of St. Louis County,' and the endorsement, 'James Castello, Sheriff.' It is with some doubt and hesitation that I have come to the conclusion that those words should be regarded as merely descriptive of the person of the payee and endorser; but there does not appear to be sufficient reason to distinguish this case from those in which the person mentioned in the paper or instrument is also described as trustee, agent, guardian or administrator, and in which those words are held to be merely words of description of the person." The foregoing opinion was rendered by a divided court, one of the three judges dissenting from the opinion of the court. We do not regard the language used by the learned writer of that opinion as controlling upon us in arriving at a decision in the instant case.

It may be admitted, however, that there is some contrariety of opinion upon the question whether the mere use of the word "trustee," following the name of the grantee or donee in an instrument of writing, is *descriptio personae* rather than evidencing a trust rela-

tion.   Among the respectable authorities apparently holding to the latter doctrine, cited by respondents, may be mentioned the following: Coaling Coal & Coke Co. v. Howard, 130 Ga. 807; Sanson v. Tie Co., 144 Ky. 555, 139 S. W. 778; Title Guarantee & Trust Co. v. Fallon, 91 N. Y. Supp. 497; Kanenbly v. Volkenberg, 75 N. Y. Supp. 8; King v. Townshend, 36 N. E. (N. Y.) 513; Davidson v. Mantor, 45 Wash. 660, 89 Pac. 167; and Cowell v. Springs Co., 100 U. S. 55.

We have carefully read and considered the authorities last cited.   Nevertheless, we regard those decisions from which we have quoted, and which hold that the word "trustee," following the name of the grantee in a deed of conveyance or other instrument, is not merely *descriptio personae,* but evidences the fact or existence of a trust, as enunciating and stating the more logical, reasonable and equitable principle or doctrine of law.   SANBORN, J., in Geyser-Marion Gold Mining Co. v. Stark, 106 Fed. 558, aptly and succinctly states the matter thus: "But the word 'trustee' means something.   It is a warning and declaration to every one who reads it (1) that the person so named is not the owner of the property to which it relates; (2) that he holds it for the use and benefit of another; and (3) that he has no right or power to sell or dispose of it without the assent of his *cestui que trust.*   It denies the equitable ownership and beneficial interest of the party to whom it is applied, and asserts that he holds it in a representative capacity.   It signifies the opposite of the word 'owner,' and means that, while the party called 'trustee' has the naked legal title, he has no beneficial right, title or interest in the property."

Again, in Welles v. Larrabee, 36 Fed. l. c. 870, it is said: "The word 'trustee' is one of significance.   It is constantly made use of, not only in legal phraseology, but in common speech, to indicate that one holds the title to property, not in his own absolute right, but for the benefit of some other party or parties."

It appears from the record before us that William B. Sanford and T. B. Holland, the parties to the deed in question, were for many years associated in the banking business. It is scarcely to be conceived, by reason of their long business and banking experience, that these parties would have used the word "trustee" in the deed in question loosely, inadvisedly, or without due consideration of its usual, ordinary and significant meaning. On the contrary, it may well be presumed that the parties used the word "trustee" designedly and with the intent and purpose to evidence the existence of a trust relation. The nominal consideration of one dollar expressed upon the face of the deed, in the absence of evidence to the contrary (and there was no such evidence offered by respondents in the instant case), shows that the deed was purely a voluntary conveyance made without valuable consideration passing from the grantee to the grantor. [Scharff v. McGaugh, 205 Mo. 344; Edmonds v. Scharff, 279 Mo. 78.] We are of the opinion that the deed in question sufficiently evidences and proves the fact or existence of a trust and that Holland took the title, not in his individual capacity as owner of the fee, but in trust for another, whose name or identity is not disclosed by the deed.

II. The plaintiff, William B. Sanford, offered to testify respecting the nature and terms of the trust (the fact and existence of which trust, we hold, is sufficiently proved and evidenced by the written deed) and the intended beneficiary thereof, but his testimony was refused *nisi* upon the ground that he was incompetent to testify by reason of the death of T. B. Holland, the other party to the contract or agreement. The correctness of that ruling apparently is not questioned by appellants, nor can the propriety thereof be questioned, we think, in view of Section 5410, Revised Statutes 1919, which provides that, "in actions where one of the original parties to the contract in issue and on trial is dead, the other party to such contract shall not be admitted to

**Witness.**

testify either in his own favor or in favor of any party to the action claiming under him," and in further view of our own construction of that statute. [Rector v. Goodloe, 298 Mo. l. c. 279; Weiermueller v. Scullin, 203 Mo. 466; Edmonds v. Scharff, 279 Mo. 78; Curd v. Brown, 148 Mo. l. c. 95.]

But must plaintiff fail in his action because of his incompetency as a witness and his consequential inability to make proof of the terms of the trust and the beneficiary thereof? As we gather respondents' position from their brief, it is that plaintiff must fail in his action, unless he is able to establish by competent evidence the terms of the trust and that he is the intended beneficiary thereof. In other words, to state respondents' contention differently, it is that there can be no resulting trust in favor of the grantor in the deed (1) unless and until he has been able to show by competent evidence what the trust is, upon what terms it was created, and then that it is either impossible of execution, according to its established and proven terms, or that it is void as being in violation of law; or (2) until he shall have established by competent evidence what the trust really is, that he himself is the injured party, and that there is no one else, under the proven terms of the trust, who can take the equitable title as beneficiary of the trust.

Appellants, on the other hand, contend that, while the fact or existence of the trust is sufficiently proved or evidenced by the written deed in question, if there is no competent evidence, written or parol, showing either the terms of the trust or the intended beneficiary thereof, then the trust fails for indefiniteness and uncertainty, and a resulting trust arises by operation of law in favor of the grantor or donor of the trust.

In 3 Pomeroy on Equity Jurisprudence (3 Ed.) sec. 1009, the learned text-writer says: "If the language (of the trust) is so vague, general, or equivocal that any of these necessary elements of the trust is left in real uncertainty, then the trust must fail." And, in the foot-

note of the same section, the author concludes: "It does not follow that the grantee, devisee, or legatee takes the property absolutely free from the trust in such case; if the trust attempted to be created fails for reason of uncertainty, and the instrument shows an intention that the immediate donee was not to take and hold the beneficial interest, then a trust results to the donor."

In Section 1032 of the same treatise, the writer says: "Where property is conveyed by will or *deed* upon some particular trust or particular objects, and these purposes fail in whole or in part, or the particular trusts are so uncertain and indefinite that they cannot be carried into effect, or they lapse, or they are illegal,—in all of these cases a trust, either with reference to the whole property or to the residuum, results in favor of the grantor, or the heirs, residuary devisees or legatees, or personal representatives of the testator. The following are illustrations: Where property is given by will or *deed,* stated to be on *trust, but no trust is declared;* or upon trusts thereafter to be declared, but no such declaration is made; or is given upon some trust which has wholly failed and become inoperative; or when property is given upon a trust which is too uncertain, indefinite, and vague in its declaration to be carried into effect; or if property is given upon a trust which is illegal, and therefore void, or upon a trust which fails by lapse, and the property is not otherwise disposed of."

In 1 Perry on Trusts and Trustees (6 Ed.) sec. 157, it is said: "If a gift is made by *deed* or will upon *trust, and no trust is declared,* . . . the legal title only will pass to the grantee or devisee, while a trust in the equitable interest will result to the settlor, his heirs, or legal representatives, according to the nature of the property, whether real or personal; for it appears upon the instrument itself that the legal title alone was intended for the first taker, and that the equitable interest was intended to go to some other person, and as such other person cannot take the equitable interest for want of a declaration of the trust, it results to the settlor

or his heirs.'' And, in Section 159 of the same work it is said: "If a trust for a specific purpose fails by the failure of the purpose, the property reverts to the donor or his heirs. If the gift is made upon a trust, and the trust is insufficiently or ineffectually declared, as, if it is too indefinite, vague, and uncertain to be carried into effect, it will result to the settlor, his heirs or representatives.''

In 26 Ruling Case Law, 1216, the rule is stated thus: "If an attempt to create an express trust fails, it is as if the attempt had not been made and therefore no rights or interests are created by the instrument. The beneficiaries are not entitled to take the property on the theory that the trust feature alone of the devise or conveyance has failed, nor is the trustee entitled to the gift for his own benefit on the theory that, as the trust is void, he takes the property free therefrom. In such a case, a trust results in favor of the donor or his heirs. This is on the idea that the donee of the property did not take a beneficial interest, but took it as a trustee for the purpose of accomplishing the intentions of the donor in making the conveyance, and that there was an implied intention or understanding on the part of the donor that if the property for any reason should cease to be used for the purposes he intended when he appropriated it or could not be so used it should revert to him, if living, or, if dead, to his heirs or next of kin, through the operation of the doctrine of resulting trusts. . . . Where the trusts of a conveyance or will are not declared, or are only partially declared, a resulting trust arises in favor of the donor or his heirs or next of kin, as the case may be. On the same principle, there is a resulting trust where a trust is attempted to be created without any beneficiary entitled to demand its enforcement, or where the intended trust fails for indefiniteness or uncertainty.''

In Easum v. Bohon, 180 Ky. 451, l. c. 455, the doctrine is recognized by that court in these words: "The doctrine of resulting trusts is a familiar one in equity

jurisprudence and it arises in several different ways, one of which is where the donor conveys, either by will or deed, property for a certain purpose, which purpose fails, or it becomes accomplished with a part of the property unused, or the one to whom it is so conveyed abandons the purpose and declines to further carry it out, or where the beneficiaries are so indefinite that the intention cannot be carried out, or the purpose is . illegal. [2 Story's Eq. Juris. (13 Ed.) sec. 1196a; 1 Perry on Trusts (6 Ed.) sec. 125; Bispham's Principles of Equity (8 Ed.) secs. 87-88; 39 Cyc. 104.] When the facts attending the grant are such as to authorize it, a court of equity, when the contingency arises, will create such a trust for the benefit of the donor, if living, or his heirs or next of kin, if he be dead, and adjudge to them the unused portion of the property so donated. This is upon the idea that the donee of the property did not take a beneficial interest, but took it as a trustee for the purpose of accomplishing the intentions of the donor in making the conveyance, and that there was an implied intention or understanding on the part of the donor that, if the property for any reason should cease to be used for the purposes he intended when he appropriated it, it should revert to him if living, or if dead, to his heirs or next of kin through the operation of the doctrine of resulting trusts."

In McHugh v. McCole, 40 L. R. A. 724, 730, the Supreme Court of Wisconsin said: "If a trust for a specific purpose fails by the failure of the purpose, the property reverts to the donor or his heirs; and if the gift is made upon a trust insufficiently or ineffectually declared, as if it is too indefinite, vague, and uncertain to be carried into effect, the gift will revert to the settlor, his heirs or representatives."

In Pennoyer v. Wadhams, 20 Ore. 274, it is said: "In a private trust, if the *cestui que trusts* are so uncertain, or are so incapable of taking that they cannot be identified, or cannot, by legal or equitable proceedings,

claim the benefit conferred upon them, the gift will fail and revert to the donor or his heirs.''

In Williams v. Committee of Baptist Church, 92 Md. 497, the court said: ''If other terms had been employed, clearly indicating an intention of the testator to raise a trust, and the objects expressed were vague and uncertain, the next of kin would take, because it would be clear the legatee was not designed to have a beneficial interest.''

Respondents say that, in the foregoing authorities cited and relied upon by appellants, it was possible either to establish by competent evidence, parol or otherwise, what the trust actually was and the terms thereof, and then to show that the trust, according to its proven terms, had failed, or, after establishing the terms of the trust by competent testimony, it was possible to show that the trust was illegal. Therefore, it is asserted that the cited authorities are unlike the instant case and did not involve the construction of a deed like the one here at issue. However, we see no substantial difference or distinction between a case wherein the terms and nature of the trust are capable of being shown by competent evidence, written or parol, and a case like the one at bar, wherein the fact or existence of the trust is evidenced and proved by written deed signed and executed by the grantor of the trust, but there is no competent evidence to show the nature and terms of the trust or the intended beneficiary thereof. In either instance, the supervision of the administration of the trust falls within the exclusive jursdiction of a court of chancery. [1 Pomeroy's Equity Jurisprudence (3 Ed.) sec. 151; 26 R. C. L. 1282.] Without competent evidence of the nature and terms of the trust and the intended beneficiary thereof, a court of chancery is unable to direct or supervise the proper administration of the trust, and the trust necessarily fails by reason of indefiniteness and uncertainty. But, we think, it does not follow, as a logical sequence, merely because the trust fails of administration for lack of competent evidence to show its terms and the intended bene-

ficiary thereof, that the grantee takes and holds the fee title, where (as here) the intention of the grantor appears, by virtue of the written deed or instrument evidencing the trust relation, that the grantee is not to take a beneficial interest in the property conveyed. A resulting trust then arises and is raised for the benefit of the original grantor, if living, or his heirs or next of kin, if he be dead, upon the theory that there was an implied intention on the part of the grantor that, if the property should cease to be used for the purpose he intended when he executed the deed, it should revert to him.

III. Respondents assert that, if the land in controversy was conveyed by Sanford to Holland, trustee, upon any trust at all, then it was conveyed upon an express trust and no resulting trust can arise; in other words, respondents insist that the trust cannot be transferred into a resulting trust merely for want of legal evidence to enforce it as an express trust.

We think that the deed in question evidences or proves the fact or existence of an express trust. An express trust is one which is created by the direct or express words of a grantor or settlor, or by the intentional act of the party having dominion over the property, done with a view to the creation of a trust, while a resulting trust arises by operation of law and is the creature of equity. [1 Perry on Trusts and Trustees (6 Ed.) sec. 73; 3 Pomeroy's Equity Jurisprudence (3 Ed.) sec. 987.] Respondents cite Green v. Cates, 73 Mo. 115; Hillman v. Allen, 145 Mo. 638, and Heil v. Heil, 184 Mo. 665, in support of their contention that, if the parties intended to create an express trust, no resulting trust will be raised from their conduct merely for want of legal evidence to enforce the trust as an express trust. In each of the cited cases, however, a deed of conveyance of land, absolute in form and for an expressed valuable consideration, was made upon an express trust, the fact or existence of which was not evidenced and proved by the written instrument of conveyance itself; therefore, it was held, because of the Statute of Frauds, that the

fact or existence of the express trust could not be proved or shown by parol evidence, and it was furthermore held that the express trust intended to be created could not be transferred into a resulting trust merely for want of legal evidence (in writing) to prove or evidence it as an express trust. The case at bar, therefore, differs in an essential and important element from the cited cases in that the written deed of conveyance here in issue itself proves or evidences the fact or existence of an express trust, an element which is entirely lacking in the cases cited by respondents.

Furthermore, resulting trusts in lands are of two general types: (1) Those where a purchase has been made and the legal estate is conveyed or transferred to one party, but the purchase price is paid by another party; and (2) those where there is a gift by deed or will to a donee or grantee without pecuniary consideration coming from the grantee, but the intention appears, from the instrument itself, that the legal and beneficial estates are to be separated and that the grantee or donee is either to enjoy no beneficial interest or only a part of it. [3 Pomeroy's Eq. Juris. (3 Ed.) sec. 1031.] It seems clear to us that, while this court ruled (in the three cases, supra, cited by respondents) that an express trust cannot be transferred into a resulting trust merely for want of legal evidence in writing to prove the fact or existence of an express trust, the court was referring to the first type of resulting trusts above mentioned, and not to the second type, in which latter type the intention to create an express trust appears from, and is evidenced by, the written instrument itself.

*Express Trust.*

IV. Lastly, it is contended by respondents that, in any event, the evidence herein is totally inadequate to establish a resulting trust, which arises only from evidence so clear, cogent and convincing as to establish

such trust beyond a reasonable doubt.  Decisions of this
court are cited by respondents in support of
**Character** this contention, but our examination of such
**of Proof.** cases convinces us that they have reference
only  to that type of resulting trust which arises where
the purchase price of real property is paid by one party
and the legal title is conveyed to another party.  The au-
thorities in this State seem to be uniform that, in order
to establish that type of resulting trust, the evidence
must be clear, cogent and convincing.  The rule con-
tended for by respondents cannot well apply, however,
to the type of resulting trust before us in the instant
case, which arises by reason of the indefiniteness and
uncertainty of the trust, due to lack of competent evi-
dence to establish the terms of the trust and the in-
tended beneficiary thereof, but where, nevertheless, the
intention of the grantor that the legal and beneficial es-
tates are to be separated appears from the deed of con-
veyance itself, signed and executed by the grantor of
the trust.

We are of the opinion that the learned trial chan-
cellor erred in entering judgment, finding the issues for
defendants and dismissing plaintiff's petition.  The
cause was revived in this court in the names of the exe-
cutors and legal representatives of the deceased plain-
tiff and appellant, William B. Sanford.  The subject-
matter of the action being real property, title to which
reverts to the heirs or devisees of the deceased grantor
instead of to his legal representatives, the action should
be revived in the names of the heirs or devisees, as the
case may be, of the deceased grantor, William B. San-
ford.

Accordingly, the judgment *nisi* is reversed and the
cause remanded with directions that the cause be re-
vived, in due course of procedure, in the names of the
heirs or devisees (as the case may be) of the deceased
original plaintiff, William B. Sanford, and that judg-
ment be entered by the circuit court divesting defend-
ants of any and all right, title or interest, legal and eq-

uitable, in or to the real property involved and described in plaintiff's petition, and vesting the absolute fee simple title to said land in the heirs or devisees (as the case may be) of said William B. Sanford, deceased. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.