Elmer KARNOPP, Appellant,

v.

Mildred R. KARNOPP, Respondent.

No. 50770.

Supreme Court of Missouri,

Division No. 2.

March 8, 1965.

Robert L. Jackson, John G. Killiger, Kansas City, for appellant.

Lawrence R. Brown, Alvin D. Shapiro, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for respondent.

PRITCHARD, Commissioner.

Appellant, Elmer Karnopp, brought suit against his sister, the respondent Mildred Karnopp, a single woman, by which he sought to have a trust declared of a one-half interest in two parcels of real estate. This real estate was formerly owned by the mother of the parties, Mrs. Mattie J. Karnopp. One of the properties was the family residence at 421 West 49th Street Terrace, and the other was a storeroom and second story office structure (the Karnopp Building) at 4301 Main Street, in Kansas City, Missouri.

Respondent denied appellant's claim and also asserted a counterclaim against him by which she sought to have herself declared to be the sole owner of a third piece of real property, 4300 Walnut, just to the rear of the Karnopp Building. Respondent's theory was that of a resulting trust, she having furnished the entire consideration for the purchase of the property, the title to which was placed in the names of appellant and his wife, Willa, and respondent. Appellant's wife, Willa Karnopp, entered her appearance in the case and by specific signed and acknowledged instrument filed in the court disclaimed any interest in the third piece of real property. Respondent also prayed for an accounting of certain of her money claimed to have been expended by appellant, but she waived the right to an accounting in the court below after submission of the case.

The trial court heard the case, took it under advisement, and thereafter rendered a final decree against appellant on his petition and for respondent on her counterclaim.

We consider first appellant's claim on his petition. He pleaded that the mother of the parties, Mrs. Mattie Karnopp (of whom they are sole heirs), on or about March 15, 1956, made a quitclaim deed to a straw party, Mae R. Karnopp, of her two tracts of real estate; that Mae R. Karnopp, pursuant to Mrs. Karnopp's instructions, reconveyed on the same date the same property to Mrs. Karnopp and respondent "as joint tenants and not as tenants in common." That it was then the intent and purpose of Mrs. Karnopp that the deeds

**530**

were made for convenience only and were not intended to convey the entire equitable interest to respondent. That the deeds were made in order to permit the immediate transfer of title in the event of Mrs. Karnopp's death, but with specific instructions and agreement that the joint tenancy of respondent was for the equal benefit and use of appellant. That the intent of the grantor was that in the event of her death the parties would enjoy full legal and equitable ownership of the two tracts of real estate. It was further pleaded that there was no consideration for the deeds and no gift was intended and that respondent took title with full knowledge that her interest was for the benefit of her and appellant. By reason of all the foregoing acts and agreements it was pleaded by appellant that a trust arose by implication of law as to a one-half interest for his benefit. The petition is further that the intent of Mrs. Karnopp "was communicated to the defendant and the defendant received such joint tenancy on the express understanding and agreement that in the event of her mother's death the plaintiff would be given equal ownership in the said real estate with his sister and it was pursuant to such arrangement and agreement that such deeds were executed, made, delivered and recorded." Appellant also pleaded that respondent had failed and refused to acknowledge the trust arrangement and refused to convey to appellant his one-half interest in the property, but claimed the entire fee in her own right. The prayer of the petition was that the court find that the 1956 transactions were intended and did create an equal ownership in the parties, and that respondent is the trustee of a constructive trust for the benefit of appellant of a one-half interest in the two tracts of real estate.

■ Appellant suggests in his brief that the nature of his remedy is that of a resulting trust. Such suggestion is without merit. A resulting trust usually involves only the situation where one person pays the purchase price of property, which

raises a presumption that the purchase was for his own benefit. Appellant does not contend that he furnished anything for the deeds. See Swon v. Huddleston, Mo., 282 S.W.2d 18, 24, 55 A.L.R.2d 205.

■ We construe appellant's pleading to be at best one for the establishment of a constructive trust of the properties in question. If it is an express trust without more [done by the direct and positive acts of the parties, 89 C.J.S. Trusts § 11, p. 722; Sanford v. Van Pelt, 314 Mo. 175, 282 S.W. 1022, 1031; Gwin v. Gwin, 240 Mo. App. 782, 219 S.W.2d 282, 285], appellant's case must fail because his evidence does not satisfy the Statute of Frauds, § 456.-010, RSMo 1959, V.A.M.S. Although respondent did not plead the Statute of Frauds as an affirmative defense as is ordinarily required, Condit v. Maxwell, 142 Mo. 266, 44 S.W. 467, 469, she did make timely objection to the parol evidence tending to show an express trust established, and renewed that objection throughout the trial. The timely objection was sufficient to interpose the unpleaded defense of the Statute of Frauds. Long v. Conrad, Mo., 42 S.W.2d 357, 361 [3, 4]. If there is, however, evidence of unconscionable conduct on the part of the grantee in inducing the conveyances, or causing the grantor not to make a provision by will which she would have made absent such conduct, then the Statute of Frauds is no bar to an action to establish a constructive trust. Mead v. Robertson, 131 Mo.App. 185, 110 S.W. 1095, 1096; Thierry v. Thierry, 298 Mo. 25, 249 S.W. 946, 954 [9]; Jackson v. Tibbling, Mo., 310 S.W.2d 909, 915 [4–6].

The only testimony bearing upon his claim is that of appellant himself. Mrs. Karnopp was killed in an automobile collision near Osceola, Missouri, in September, 1960. In that same collision respondent was severely and critically injured which occasioned her hospitalization at St. Luke's Hospital in Kansas City for about five months. Appellant came to Kansas City and took over the management of the

business properties and attended to the illness expenses of respondent, using proceeds from the cashing of U. S. Bonds which had been jointly held by respondent and her mother. Appellant testified that respondent herself brought up the subject of the management or ownership of the property in November, 1960, while she was at St. Luke's Hospital. Appellant testified that respondent stated to him that the property was in her name, that it had been put there as a convenience and for him not to worry because half of everything was supposed to be his and it was for his protection also that it was that way; that their mother desired that they both have the property and to enjoy it equally. At no time during the discussions about the property and changing the title thereto, did respondent raise any question about appellant's right to receive a one-half interest in the real estate.

█ It is apparent that the above is insufficient evidence to establish a constructive trust. There is no evidence that Mrs. Karnopp ever directed that respondent hold the property for appellant's benefit at the time the conveyance was made. Indeed, the evidence is overwhelming that Mrs. Karnopp intended to benefit only respondent, and that she intended to exclude appellant who was capable of caring for himself. There was no evidence that respondent ever made a promise to her mother to hold the real estate in trust for appellant's benefit. Even if there were such a promise, "The mere violation of a parol promise made by a grantee of land to the grantor thereof, to hold such land in trust or for a specified purpose, or to convey it back to the grantor or to a person designated or to be designated by him, does not create a constructive trust in the grantee, in the absence of fraud in procuring the conveyance to him, since the trust, if any, is an express one and is not enforceable under the statute of frauds; and, a fortiori, a simple avowal of acquisition of property for the benefit of another, or of an intention to convey it to another, *not made as a promise or inducing the conveyance,* will not give rise to a constructive trust." 89 C.J.S. Trusts § 149, p. 1040. (Emphasis added.) See also Beach v. Beach, Mo., 207 S.W.2d 481, 486 [5]; Jankowski v. Delfert, 356 Mo. 184, 201 S.W.2d 331, 335 [5–7]; Strype v. Lewis, 352 Mo. 1004, 180 S.W.2d 688, 690; Anno. 155 A.L.R. 106. Since appellant's case was entirely devoid of proof that Mrs. Karnopp made the deeds in reliance upon a promise by respondent that she would hold the property for the benefit of appellant, as to a one-half interest; or that the conveyances were induced or obtained by fraudulent means, that is, by any artifice, deception, undue influence, duress, coercion, false representations or fraudulent conduct on the part of grantee, Mildred Karnopp (Beach v. Beach, supra, loc. cit. 207 S.W.2d 486 [6]), the trial court correctly entered a decree against appellant upon his claim.

█ Appellant conceived the idea to purchase the 4300 Walnut Street property and mentioned it to respondent while she was still in the hospital. She was reluctant to do so, thinking she would need her funds to care for herself. Appellant, according to respondent and witness Chaplain Beachy, hounded her repeatedly about this matter, and according to witness, Phoebe Carpenter, who was her nurse, at times when she was under tranquilizers and pain-killing sedation, the pain being severe, especially from nerve damage in the left arm and hand. The evidence of respondent's physical condition which resulted from the automobile collision was that she suffered seventeen broken bones; both legs were in casts and traction; she had a brain concussion; four broken bones in her neck which necessitated her wearing a neck collar; her right arm was in a cast and under traction; and her pelvis was broken. During the time appellant was looking after respondent's affairs her mental condition was that she was grief stricken over the death of her mother; her psychiatrist, who had treated her in 1958 for a mental condition characterized her as a suggestive and a

**532**

dependent person, although at the time she was in the hospital after September, 1960, she was not suffering from any disabling mental illness, and was competent from a legal standpoint. At the time she left the hospital in March, 1961, according to Chaplain Beachy (who was the hospital Chaplain and also a medical doctor and who counselled with respondent while she was in the hospital) respondent had not yet adjusted to her situation. Respondent herself testified that during the times appellant was talking to her about business, she was upset about her mother's death, and was confused and worried. Appellant finally persuaded respondent to cash another bond of a face amount of $10,000, the cash value of which was used as a down payment on the property. The evidence is clear from this record that respondent did not go into this venture of her own volition, but that she was subjected to pressures from appellant amounting to duress and coercion at a time when she was not mentally and physically capable of resisting. This was at a time also when appellant was acting in a fiduciary relationship with respondent, handling all of her business and managing her properties. These facts, coupled with appellant's conceded statement that he furnished none of the consideration and that the title was placed not in respondent's name alone, but also in appellant's and his wife's name, are sufficient to justify the trial court's declaration of a resulting trust of the property in respondent, and decreeing title to be solely in her. Swon v. Huddleston, supra; Sanders v. Sanders, 357 Mo. 881, 211 S.W.2d 468; Decker v. Fittge, 365 Mo. 139, 276 S.W.2d 144, 147 [2]; and Isenman v. Schwartz, Mo., 335 S.W.2d 112, 116 [2–7]. Appellant has not by any evidence justified any interest in the property being in himself, so as to rebut the presumption that the one furnishing the purchase money intends the beneficial title to be in himself. 54 Am. Jur. Trusts, § 603, p. 467; Long v. Kyte, Mo., 340 S.W.2d 623, 627 [3].

The decree of the trial court against appellant on his claim and for respondent on her counterclaim is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.